## Pearl *v.* Clark.

A. informed B. of his intention to draw on him at Philadelphia, and remit funds via Mobile to meet the draft. B. declined entering into the operation, and informed A. the remittance would be wholly at his risk. B. drew and remitted the funds to T., at Mobile, for account of B. T. purchased a draft with these and other funds, and remitted to B., who was informed with what funds the purchase was made. B. cannot apply the proceeds of the draft to T.'s debt, but holds it for A. He should have refused to receive the money had he intended to repudiate the transaction entirely.

Certificate from the Nisi Prius.

*April* 7, 8.—This was an action of assumpsit, in which the material point was the right of the plaintiff to the proceeds of a draft of Gracie on Russell, or a proportion thereof. On the trial before Burnside, J.; the plaintiff proved that Toulmin was a commission merchant in Mobile, and on the 7th March, 1842, in good credit, not contemplating a suspension. That he was a correspondent of Clark & Co. of Philadelphia, the defendant, and one of their agents for receiving Alabama and other moneys, and remitting as directed; and also corresponding with Pearl, the plaintiff, as their agent, and on his (Pearl's) own account. The plaintiff then gave in evidence a letter from Pearl to Clark & Co., of the 15th February, 1842, informing them that he would remit, on their account, $1000 Alabama money, to Toulmin, and his intention to draw, requesting acceptance, throwing the hazard of the remittance on him if they should not be willing to take the operation on their own account. The next day he drew, and informed Clark & Co. on the 28th. Clark & Co. declined the operation, and stated that Pearl must consider it on his own account, having no authority to make such remittances, and that they would inform the holders of Pearl's drafts that the funds were on their way from Mobile. On the 16th, Pearl remitted $1000 Alabama money to Toulmin, as for Clark & Co., and $390 on his own account; and on the 12th, $219 as for Clark & Co. On the 19th, he remitted $725 for Clark & Co. and $1500 on his own account. On the 30th March, Clark & Co. wrote Pearl, stating they had received no funds. On the 9th April, Pearl replied, stating his remittance to Toulmin, supposing he would remit under general orders; as he had not, he would specially request him to do so. Toulmin, in his examination, stated that the $219 was received on the 22d February, the $1000 and $725 on the 7th March, said to be on account of Clark & Co. The same day he bought on account of these three sums, and with money received from Pearl,

A. Gracie's draft on Russell & Co., at sixty days' sight, for $1700
                          at twelve and a half per cent. premium    212 50

                                                          $1912 50

which he remitted the same day to Clark & Co. in a letter, stating, " I received an hour ago, from Pearl, on your account, $1000 and $725. Enclosed is Gracie's draft, on your account. Also for account of Pearl, five days sight, on Collomb, for $1304, at fifteen per cent.   I could only get this and a trifle more,"—which Clark & Co. received March 19th, and acknowledged April 6th ; in which letter, complaining of his delay, they request him to pay over the balance in his hands, and demand interest for " the balance due from you, $1000 and $725 you received from Pearl; they are for his account, and your delay may cause the protest of his draft."

On the 8th April, Clark & Co. acknowledged the account current of Toulmin, in which T. debited himself with the three items of cash received from Pearl, and took credit for Gracie's draft.   Toulmin stated this account was never objected to.

On the 19th April, Toulmin wrote Clark & Co., after stating the receipts from Pearl of $1000 and $725, " against these remittances I sent you the same day A. Gracie's draft on Russell for $1700.   I am astonished, therefore, that on the 30th ult. you should have advised him that nothing had been received against these remittances.   I did not keep them two hours on hand, and I know from your letter of the 8th that you received them."   He then said he had been obliged to suspend, &c.

On the 3d May, Pearl wrote Clark & Co., saying he had been informed of the remittance by Toulmin, and requesting its application to the payment of his draft.

On the 16th, Clark & Co., in reply, admitting the receipt of the draft from Toulmin and placed to the credit of his account : " This remittance was made in consequence of a strong demand from us on the 22d February, requiring an account, &c. ; it did not reach the amount due us at the time.   With respect to the remittance by you to him, excepting the $219, we have nothing to do."   An extract from Toulmin's account ran thus :—

" Cr.      Clark & Co. in account with Toulmin.
     " March 7.   To A. Gracie's draft on Russell, at sixty days,
     $1700, at twelve and a half per cent., $212 50        $1912 50
     Balance carried over      -      -      -      -      -      -      1544 81

"Dr. February 22. By cash received from D. Pearl, per
    letter, February 12  -  -  -  -  -  -  $219
                  Ditto    ditto    ditto  February 16, 1000
                  Ditto    ditto    ditto  February 19,   725"

On the 27th May, Pearl wrote to Clark, averring the purchase of the draft was a specific application of the remittance by him on Clark's account.

Plaintiff then proved the payment of Gracie's draft.

His honour said it was fairly to be presumed the $1304 draft in the letter of the 7th March, was part of the money received from Toulmin, on Pearl's account ; Clark & Co. having disclaimed his right to remit, they did not recognise his right to receive, and this Pearl knew. They were authorized to place the money as Toulmin, directed and that here T. had directed it to his own account. He did not think the evidence warranted the belief that the $1700 draft was purchased with the identical money received from Pearl, but that Toulmin, being the agent of Pearl, had the right of appropriating the money, being responsible for the appropriation, and that after the direction from him, Clark & Co. were bound to follow it, and it could not be altered without Clark's assent. That it was not the case of confusion of goods, and the plaintiff could not participate in the proceeds of the draft on Russell. There was no laches in Clark which ratified the receipt by Toulmin as his agent.

*Gerhard*, for plaintiff.—The error of the judge was in assuming a mistaken state of facts ; when they are understood, the case is perfectly plain. A few principles will settle this. The rules as to appropriations of payments are all founded on principles of honesty and fair dealing, and common sense. No one is at liberty to apply the money belonging to another to a debt due from a third person. Thompson *v.* Brown, 1 Mood. & Malk. 40 ; Reed *v.* Boardman, 20 Pick. 441 ; Tavence *v.* Bennett, 11 East. 36, under this we are least entitled to an apportionment, 6 Cranch, 27; Harker *v.* Conrad, 12 Serg. & Rawle, 305.

This appropriation may be proved from circumstances, Tayloe *v.* Sandiford, 7 Wheat. 13; Shaw *v.* Pickton, 4 Barn. & Cress. 715; Waters *v.* Tompkins, Cro., Mees. & Ros. 723 ; S. C. 1 T. & G. 137, 15 Wend. 352, as it seems to me at any time after remittance, when this may be done of the Gracie draft before it became due. Hankey *v.* ——, Peake Add. Ca. 107 ; Pidder *v.* Waters, Id. 41 ; Gibson *v.* Minet, 1 Carr. & Payne, 147 ; 2 Greenl. Ev., sect. 531. We are entitled on the ground of a confusion of goods, for the defendant was clearly our agent to pay our draft on receiving the money remitted for

that purpose; and blending the two accounts, we are entitled to a pro rata share. Barret *v.* Denison, 2 Pick. 123; Cole *v.* Twill. 9 Pick. 325; Blackston *v.* Hill, 10 Pick. 129. There is still another clear ground to maintain the plaintiff's claim. On the 19th of May, Clark & Co. knew that Toulmin had received $1000 and $725 from Pearl, as their agent, and by the suppression of the truth, and untrue allegations, they lulled both Pearl and Toulmin into security; and it was not until the 6th of April that Toulmin received any intimation from Clark & Co., that his receipt of these sums was not to be treated as his act, as their agent. They thus ratified his act in that capacity. Dubarry *v.* Bredin, 14 Serg. & Rawle. In this view of the case, the defendants are liable to the plaintiff for the sum of $1725, received by them through their agent, Toulmin.

*Badger,* contrà.—The principle. of Harker *v.* Conrad is the one we rely on. The money was received generally on account of Toulmin, and applied to his debt by us having had no direction. Whether the identical funds once belonged to Pearl was immaterial, for he kept his funds together, and we could not recognise any ownership but his; this is plain, for the draft on Russell could not be purchased with the money received from Pearl.

*April* 13. SERGEANT, J.—As the amount for which this suit is brought was originally the money of the plaintiff, it lies on the defendants to show that, under the circumstances, they were authorized to appropriate it to themselves in payment of a debt due to them by Toulmin, on other transactions: otherwise, the plaintiff would be entitled to recover. There may possibly be a case where an agent, sending the money of his principal to a third person for an unauthorized purpose, might so act as to justify the appropriation of it by the latter to himself; though it would undoubtedly be mala fides in the agent to do so. But if there be no act of that kind done by the agent, and the third person to whom the money is sent stands in such relation to the principal that it is mala fides in him so to appropriate it, he cannot retain it. That Toulmin, who is to be considered in this transaction the agent of the plaintiff, did not intend to divert this money from its proper destination, seems apparent from his deposition, in which he states that he bought the Russell draft with the money received on the same day from the plaintiff, and that it was sent to the defendants, to liquidate the remittances received from the plaintiff; and with this statement his letters and account current sent to the defendants seem to concur. Then the question is, whether Toulmin's letter of the 7th March, 1842, spoke differently, and authorized the defendants to treat

the remittances as Toulmin's own, and appropriate them to the payment of their debt from Toulmin. The words in this letter on which the defendants chiefly rely are the phrase, "on your account." But to understand the meaning and operation of these words it is necessary for us to take a view of the situation in which the parties stood at that time. Pearl had drawn drafts on the defendants on the 15th and 16th February, 1842, without authority. He was uncertain whether they would accept them : but his design was, as he informed the defendants in his letters, forwarding information of these drafts, to provide for them by remittances to Toulmin at Mobile. On the respective days following these letters, Pearl accordingly remits to Toulmin at Mobile 1725 dollars, "*for E. W. Clark and Co.,*" for the purpose of covering the drafts he had drawn upon them, and pursuant to his undertaking in his letters to the defendants. These remittances constitute the fund now in question.

Toulmin received these remittances on the 7th March, 1842, and being ignorant, so far as we know, of the transactions that had occurred between Pearl and the defendants, but acting in strict conformity to the directions of Pearl, immediately sends on the Russell draft, purchased with the money remitted by Pearl, to the defendants, in the letter of that date, in which, after stating the receipt of the money from Pearl an hour before, he says, "enclosed is A. Gracie on C. H. Russell & Co., 60 days' sight, for $1700, at 12½ per cent., *on your account.*" Now the question is, whether this authorized the defendants to take that money to themselves, (the draft being afterwards paid to them,) to pay a debt from Toulmin to them, incurred in other transactions. However that might be if there were nothing in the case but this single letter, yet we think, in looking at this whole transaction from its commencement to its date, these words, "on your account," are not necessarily to be construed as the defendants wish to do, but may imply another meaning. For we find that Pearl, in his first letters to the defendants, tells them he would remit "for *your account*" to Toulmin, *via* Mobile, funds for the drafts, and if they would not accept them, to throw the risk of the remittance *via* Mobile on Pearl. And of this the defendants were apprized on or before the 28th February, 1842, before Toulmin wrote to them, and when they answered ; and in this answer it clearly appears they understood the destination of these intended remittances, for they say, "We shall not accept or pay the two other drafts, but shall tell the holders that the funds are on the way from Mobile to meet them." They must, we think, therefore have understood clearly, when these remittances afterwards came, that they were to be applied to the payment of Pearl's drafts on them—by

themselves, if they accepted—by the plaintiff or his agents, if they refused the drafts, and that this was the meaning of the phrase, "for your account," used by Toulmin. They did refuse to accept or pay the drafts, telling Pearl they must consider it all on his own account, as he had no authority to make remittances or draw. The consequence of this is, that they were entitled to the remittances if they accepted the drafts, but not that if they refused them, they could apply the remittances, when they came to hand, to any other purposes than to cover the drafts, or, what is the same, for Pearl's account. If the character of these remittances was stamped upon them by the first letter from Pearl to the defendants, it could not be afterwards changed by the defendants' act, because they suspected Toulmin was about to fail. It is true, they might repudiate the act of Pearl in drawing and remitting to Toulmin on their account, and were no way bound to have any thing to do with the drafts and remittances. But they must repudiate the whole. They could not refuse to accept the drafts, and yet take the remittances sent to meet the drafts, and apply them to another purpose than that which they knew they were destined for. This would be mala fides. This would be perverting to the payment of their own debt from Toulmin, a fund that came into their hands for another purpose. They must take the remittances as Pearl sent them, through his agent, Toulmin, or not at all; and it is, we think, evident he sent them to meet his drafts, and that the defendants, in justice and good faith, were bound so to regard it. This being the point of view in which the main features of this case appear to us, the judgment must be reversed, and a venire facias de novo awarded.

Judgment reversed, and venire facias de novo awarded.